**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**
**Civil Action No: 1:25-cv-000229**

SINGLETON VISION CENTER, P.A.,

        Plaintiff,

v.

BLUE CROSS AND BLUE SHIELD OF
NORTH CAROLINA

        Defendant.

## <u>AMENDED BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS</u>

Defendant Blue Cross and Blue Shield of North Carolina ("Blue Cross NC"), through counsel and pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) and Local Rule 7.3, respectfully submits this amended brief in support of its Motion to Dismiss for failure to state a claim.

## <u>PRELIMINARY STATEMENT</u>

Plaintiff Singleton Vision Center, P.A. is an ophthalmology practice that signed a Network Participation Agreement with Blue Cross NC in May 2016. Under the Agreement, Blue Cross NC agreed to (and did) pay for "covered services" rendered to Blue Cross NC members. The Parties then enjoyed a mutually beneficial relationship for almost eight years. In December 2024, however, Singleton abruptly sued Blue Cross NC for breach of contract and unfair and deceptive trade practices relating to payments for services on an "estimated 2000 different" but unidentified dates throughout those eight years—despite its

admission that it "noticed" the now-challenged actions over seven years ago in Spring 2017. Singleton's long-delayed claims lack merit and should be dismissed.

*First*, to the extent they involve patients enrolled in health plans governed by the Employee Retirement Income Security Act ("ERISA"), Singleton's claims are preempted by ERISA. Based on Blue Cross NC's limited review of claims spreadsheets provided by Singleton, many of the disputed payments relate to denials (or partial denials) of coverage for members of employer-sponsored health benefit plans.

*Second*, multiple patients at issue were enrolled in a federally sponsored health benefits plan for federal employees and retirees and their families. Those claims are barred by the federal government's sovereign immunity (because health benefits and other plan expenses are paid from the Federal Treasury) and are preempted by the Federal Employees Health Benefit Act ("FEHBA"), 5 U.S.C. §§ 8901-8914.

*Third*, many of Singleton's claims (including some that should be dismissed for the reasons above) are untimely. The Participation Agreement bars any claims for payment beyond two years, extinguishing any claims that accrued before December 19, 2022. Even absent that limitation, North Carolina's three-year statute of limitations for breach of contract claims, which begins at the time of breach, bars all of Singleton's claims involving alleged breaches before December 19, 2021. The statute of limitations for Singleton's UDTPA claims is four years running from the date of the alleged violation, barring any claim for such violations that occurred before December 19, 2020. These statutory

limitations eliminate almost five years' worth of Singleton's claims, regardless of the type of health plan at issue.

*Fourth*, any surviving breach of contract claims are fatally flawed. The Complaint contains only barebones legal conclusions that Blue Cross NC did not adequately pay for 2000 unidentified dates of service. It does not provide the Court with a listing or description of which transactions are at issue, nor does it provide any basis to discern which provisions of the Participation Agreement were allegedly violated. These bare and unsupported allegations do not plausibly allege a breach of contract or provide Blue Cross NC adequate notice to respond to the Complaint, warranting dismissal.

*Fifth*, Singleton's lingering UDTPA claim improperly repackages its breach of contract claim. Singleton—a sophisticated ophthalmology practice—cannot allege that Blue Cross NC committed any "unfair" or "deceptive" practice when Singleton decided to continue enjoying the benefits of its relationship with Blue Cross NC for almost eight years despite "noticing" the now-challenged actions all the way back in early 2017. Even if Singleton could establish an "unfair" or "deceptive" practice, its claim still fails because the challenged activity falls under the UDTPA's broad learned profession exemption, which applies to billing disputes related to medical providers. In sum, the Complaint should be dismissed in its entirety with prejudice.

# BACKGROUND[1]

On February 4, 2016, Singleton, an ophthalmology practice, entered into a Network Participation Agreement with Blue Cross NC, incorporated by reference in Paragraph 6 of the Complaint. (Compl. ¶¶ 1, 6; *see* Ex. 1 (Participation Agreement with reimbursement exhibits redacted)).[2] Under the Participation Agreement, Singleton agreed "to render Medically Necessary Covered Services to" Blue Cross NC members. (Ex. 1 § 2.1.1.) Those covered services are limited to "the benefits and services, goods, equipment and supplies specified in the Benefit Plan to which Members are entitled in accordance with the terms and conditions thereof." (*Id.* § 1.7.) Blue Cross NC, in turn, agreed to pay Singleton for its provision of covered services provided to members. (*Id.* § 4.1.) The amount of the payment for covered services was to be "the lesser of [Singleton's] usual charge or the amount specified in" the Reimbursement Exhibit attached to the Participation Agreement. (*Id.*) The Parties thereafter appeared to enjoy almost eight years of a mutually beneficial relationship, with Singleton providing services to Blue Cross NC members and Blue Cross NC issuing payments for covered services to Singleton. (Compl. ¶ 9.)

Unbeknownst to Blue Cross NC, "[i]n or about Spring 2017" Singleton allegedly "noticed" that Blue Cross NC was not paying "Singleton in accordance with the terms of

---

[1] Blue Cross NC accepts the well-pleaded factual allegations as true for purposes of this Motion only. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[2] *See Bobby P. Kearney, MD, PLLC v. Blue Cross & Blue Shield of N.C.*, 376 F. Supp. 3d 618, 623 (M.D.N.C. 2019) (noting that courts may consider documents "attached to the motion to dismiss … so long as they are integral to the complaint and authentic" (citation omitted)).

4

the" Participation Agreement. (*Id.* ¶ 15.) Under the Participation Agreement's "Informal Resolution" section, Singleton's proper recourse was to "meet and confer in good faith" with Blue Cross NC, including contacting Blue Cross NC's "Network Management department" if the customer service department did not address its concerns. (Ex. 1 §§ 6.5 and 6.5.1.) Singleton does not allege how or when it followed this agreed-upon Resolution process. Instead, it only vaguely alleges that it "contacted" Blue Cross NC on unidentified "occasions from 2017 to the present" about its billing concerns. (Compl. ¶ 18.) Despite these unspecified "contacts," Singleton continued treating Blue Cross NC members for eight years while accepting Blue Cross NC's payments. (*Id.* ¶ 9.) In fact, Singleton signed a "First Amendment" to the Participation Agreement in February 2024 that raised its reimbursement rate for certain services. (*Id.* ¶¶ 10-11.)

Seemingly out of the blue, and months after signing a new deal increasing its reimbursement rates, Singleton initiated this lawsuit in state court against Blue Cross NC on December 19, 2024, asserting claims for breach of contract and unfair and deceptive trade practices spanning these eight years. (*See* Compl.) Despite the broad time frame encompassed by these allegations, however, the Complaint is only six pages long and does not cite to any allegedly violated provisions of the Participation Agreement. Instead, for the breach of contract claim, the Complaint abstractedly alleges that Blue Cross NC did not adequately pay for "2000 different" (but unidentified) dates of service in a "principal amount of approximately $1,700,000." (Compl. ¶ 20.) As to the UDTPA claim, Singleton alleges that Blue Cross NC's lack of payment was unethical and an "inequitable assertion

5

of its power or position." (*Id.* ¶ 24(a), (b).) The Complaint does not include any indication of which instances of service are at issue, how much Blue Cross NC issued in payments, how Singleton applied each of Blue Cross NC's payments, or which contractual provisions were allegedly violated.

After being served with the Complaint, and puzzled by Singleton's vague allegations, Blue Cross NC requested (and Singleton provided) Claims Spreadsheets that purportedly identify the disputed instances of service. Blue Cross NC learned that many of the disputed instances of service related to FEHBA enrollees and members of employer-sponsored health benefit programs under ERISA, both of which establish removal jurisdiction. Thus, it promptly removed the case to this Court within thirty days of receiving this information. It now moves to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6).

## LEGAL STANDARD

Rule 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. Under this Rule, "the plaintiff bears the burden of proving, by a preponderance of evidence, the existence of subject matter jurisdiction." *Garnick v. Wake Forest Univ. Baptist Med. Ctr.*, 629 F. Supp. 3d 352, 358 (M.D.N.C. 2022). In a Rule 12(b)(1) challenge, courts may consider evidence. *See Johnson v. North Carolina*, 905 F. Supp. 2d 712, 719 (W.D.N.C. 2012) (noting that, in a Rule 12(b)(1) motion, "a trial court may … go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations").

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible only if the complaint's factual allegations allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Bobby P. Kearney, MD v. Blue Cross & Blue Shield of N.C.*, 376 F. Supp. 3d 618, 623 (M.D.N.C. 2019). This standard "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. Instead, the plaintiff must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* (citation omitted).

## ARGUMENT

### I. To the extent they involve participants in ERISA plans, Singleton's claims are preempted by ERISA.

As an initial matter, ERISA preempts Singleton's claims relating to members of employee benefit plans. ERISA preempts state laws that "relate to any employee benefit plan." 29 U.S.C. § 1144(a). A state law "relates to" an ERISA plan "if it has a connection with or reference to such a plan." *Kearney v. Blue Cross & Blue Shield of N.C.*, 233 F. Supp. 3d 496, 502 (M.D.N.C. 2017) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983)) (cleaned up). This standard is "broad" and "expansive." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987). Indeed, "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted."

7

*Kearney*, 233 F. Supp. 3d at 502 (quoting *Aetna Health Ins. v. Davila*, 542 U.S. 200, 209 (2004)) (cleaned up).

A "state law," in turn, "includes all laws, decisions, rules, regulations or other State action having the effect of law, of any State." *Id.* (quoting 29 U.S.C. § 1144(c)). ERISA's "preemptive scope is not limited to 'state laws specifically designed to affect employee benefit plans.'" *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 341 (4th Cir. 2007) (citation omitted). Instead, "[a]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted." *Aetna*, 542 U.S. at 209.

Here, many of the plans at issue in Singleton's claims spreadsheets are employer-sponsored health benefit plans that are either self-funded or provide medical benefits through insured group health plans from Blue Cross NC. These are "employee benefit plans" under ERISA. *See* 29 U.S.C. § 1002(1), (3). Singleton's breach of contract claims concerning coverage determinations under these ERISA-governed plans easily fall under the Supreme Court's broad ERISA preemption test. *See, e.g.*, *Black v. Wells Fargo & Co.*, No. 3:15-cv-270-RJC, 2016 WL 483135, at *2 (W.D.N.C. Feb. 5, 2016) ("[C]ourts have repeatedly held that ERISA preempts state law breach of contract claims."); *Gauldin v. Honda Power Equip. Mfg., Inc.*, 351 F. Supp. 2d 455, 457 (M.D.N.C. 2005) (noting that ERISA "generally preempts claims asserted under state contract law regarding ERISA

plans"); *Clement v. Aetna Life Ins. Co.*, 355 F. Supp. 2d 813, 816 (M.D.N.C. 2005) (holding breach of contract claim relating to ERISA-governed plan was preempted by ERISA).

Likewise, Singleton's UDTPA claims are preempted because they target Blue Cross NC's administration and denial of claims for benefits under the applicable ERISA plans. *See, e.g.*, *Ford v. Hartford Life & Acc. Ins. Co.*, No. 3:08CV281, 2009 WL 963594, at *5 (W.D.N.C. Apr. 8, 2009) (noting that where allegations "are of a wrongful failure to continue or to pay benefits, state law claims for … unfair and deceptive trade practices are preempted by ERISA"); *Pearson v. Hartford Comprehensive Empl. Benefits Servs. Co.*, No. 1:05CV00749, 2007 WL 295342, at *3 (M.D.N.C. Jan. 29, 2007) ("When a plaintiff brings a cause of action against a party alleged to be in violation of his or her administrative duties under an ERISA plan, such a claim must be brought under ERISA, or it is otherwise preempted."); *Jarvis v. Stewart*, No. 1:04CV00642, 2005 WL 3088589, at *3 (M.D.N.C. Nov. 17, 2005) (holding that ERISA "preempts unfair and deceptive trade practice claims when the allegations state the denial of benefits was an unfair and deceptive act").

That Singleton is a healthcare provider, not a participant of an ERISA plan, is immaterial. *See Kearney*, 233 F. Supp. 3d at 504 (holding that a provider's state-law claims against Blue Cross NC were preempted where they related to coverage determinations for members of ERISA plans); *see also Ray Klein, Inc. v. Bd. of Trustees*, 307 F. Supp. 3d 984, 992 (D. Alaska 2018) (holding that provider's claims were preempted by ERISA because the amounts owed "depend on the Plan's definitions of the scope of covered charges"). Singleton's claims related to these members of ERISA plans are preempted, warranting

dismissal. *See Kearney*, 233 F. Supp. 3d at 502 ("[A] state law claim that is conflict preempted under [ERISA] must be dismissed.").

II. **To the extent they involve enrollees in a FEHBA plan, Singleton's claims are barred by the federal government's sovereign immunity and preempted by FEHBA.**

Some of the health benefit claims at issue involve patients enrolled in the FEHBA-governed Service Benefit Plan ("SBP"). Jiminian Decl. ¶ 10 (ECF No. 1-4). Blue Cross NC administers the SBP in North Carolina and it denied or partially denied those benefit claims based on the SBP's terms. *Id.* ¶¶ 11-13; Stuhan Decl. ¶ 4 (ECF No. 1-3). The SBP is a federally-sponsored health plan for federal employees that is governed by the Federal Employees Health Benefit Act ("FEHBA"), 5 U.S.C. §§ 8901-8914. *See* 5 U.S.C. § 8903(1). Plaintiff's claims related to SBP enrollees must be dismissed for two separate reasons: they are barred by the federal government's sovereign immunity and are expressly preempted by FEHBA. The SBP is formed, pursuant to FEHBA, by a federal government contract between U.S. Office of Personnel Management ("OPM") and the Blue Cross and Blue Shield Association ("BCBSA"), which acts on behalf of local Blue Cross and Blue Shield companies that administer the SBP in their respective localities. Stuhan Decl. ¶ 4; *see generally* 2013 Contract No. CS 1039 (ECF No. 1-9); 2022 Contract No. CS 1039 (ECF No. 1-10) [collectively, "OPM-BCBSA Contract"]; *see also* 2021 Statement of Benefits at 4 (ECF No. 1-6).[3]

---

[3] Periodically, the OPM-BCBSA contract is restated in what is called the "OPM-BCBSA Contract." Stuhan Decl. ¶ 5. The most recent version is from 2025, and the two before that

The SBP offers a "Preferred Provider Organization," which is a network of "certain hospitals and other healthcare providers" that have been designated as "preferred providers" or "PPO providers." *E.g.*, 2021 Statement of Benefits at 13. The SBP also offers "participating providers," which are not preferred providers but with which Blue Cross NC (or another local Blue Cross and Blue Shield company) contracts. *Id*. The SBP pays preferred providers and participating providers at negotiated rates. *E.g., id*. at 13, 29-30, 155-56. The Participation Agreement means Singleton is a preferred or participating provider.

Under FEHBA, the federal government pays the majority of the premium cost for each enrollee, with the enrollee paying the remainder. *See* 5 U.S.C. § 8906(b)(1), (b)(2), (f); *Helfrich v. Blue Cross & Blue Shield Ass'n*, 804 F.3d 1090, 1092 (10th Cir. 2015). All premiums are deposited initially into the Employees Health Benefits Fund within the U.S. Treasury. 5 U.S.C. § 8909(a); *Helfrich*, 804 F.3d at 1092. Carriers of experience-rated FEHBA plans—such as the SBP (*see, e.g.*, OPM-BCBSA Contract § 3.3(a))—do not receive the premiums as they are paid into the Employees Health Benefits Fund in the Federal Treasury. Instead, the premiums for the SBP are placed into a special letter of credit

---

are from 2022 and 2013. *Id*. In other years, OPM and BCBSA entered into amendments to the most recent version of the OPM-BCBSA Contract. *Id*. ¶ 6. The 2021, 2023, and 2024 annual amendments can be found at ECF Nos. 1-11, 1-12, and 1-13. The applicable annual Statement of Benefits is incorporated into each version of the OPM-BCBSA Contract or annual contract amendment. *See* OPM-BCBSA Contract § 2.2(a); *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 684 (2006); Stuhan Decl. ¶ 7. Because the relevant versions of the Statement of Benefits are substantially identical, we typically cite only to the 2021 version. The 2022-2024 versions can be found at ECF Nos. 1-7, 1-14, and 1-5, respectively.

account within the U.S. Treasury fund. 48 C.F.R. § 1632.170(b)(1); *see also id*. § 1652.232-71(d). SBP administrators such as Blue Cross NC draw directly from the letter of credit account in the U.S. Treasury to pay for benefit claims and allowable administrative expenses. *Id.* §§ 1632.170(b), 1652.216-71(b); *Helfrich*, 804 F.3d at 1092. Premiums that are not used to pay benefits and administrative expenses belong to the government. *See, e.g.*, OPM-BCBSA Contract § 3.3; *Helfrich*, 804 F.3d at 1092.

A. **Sovereign immunity bars Singleton's claims relating to SBP enrollees.**

Because any amounts Singleton seeks in connection with SBP enrollees would be paid from the Employees Health Benefits Fund in the Federal Treasury, all of Singleton's claims as to SBP enrollees are barred by the federal government's sovereign immunity, meaning subject matter jurisdiction is lacking and the claims must be dismissed under Fed. R. Civ. P. 12(b)(1). Sovereign immunity prohibits suits against the federal government and its agents, except where the government has "unequivocally" waived its immunity. *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33 (1992).

Because federal funds are at issue, courts have repeatedly held that all manner of claims by medical providers against FEHBA administrators are barred by the government's sovereign immunity. *See, e.g., Inspire Malibu v. Anthem Blue Cross Life & Health Ins. Co.*, No. CV 16-5229, 2016 WL 5746337, at *6-7 (C.D. Cal. Sept. 30, 2016); *Vrijesh S. Tantuwaya MD, Inc. v. Anthem Blue Cross Life & Health Ins. Co.*, 169 F. Supp. 3d 1058, 1070-71 (S.D. Cal. 2016); *Ctr. for Reconstructive Breast Surgery, LLC v. Blue Cross Blue Shield of La.*, No. 11-806, 2014 WL 4930443, at *4-5 (E.D. La. Sept. 30, 2014); *Mentis El*

*Paso, LLP v. Health Care Serv. Corp.*, 58 F. Supp. 3d 745, 753-56 (W.D. Tex. 2014);

*Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, No. 12-cv-1607,

2014 WL 360291, at *4-7 (N.D. Tex. Feb. 3, 2014).

As relevant to the FEHBA-related claims, Congress has waived sovereign immunity

only as to "a civil action or claim against the United States founded on" FEHBA. 5 U.S.C.

§ 8912. Consistent with this waiver, OPM's regulations and the Statement of Benefits allow

suits by FEHBA enrollees—or their medical providers if they have obtained permission to

do so—only against OPM and only if the proper administrative review process has first

been followed. *See* 5 C.F.R. §§ 890.105, 890.107; 2021 Statement of Benefits at 139-41.

However, other than "a civil action or claim against the United States founded on" FEHBA,

Congress has not waived its sovereign immunity with respect to the funds in the Employees

Health Benefits Fund within the U.S. Treasury. 5 U.S.C. § 8912; *see also Mentis El Paso*,

58 F. Supp. 3d at 756-57; *Inspire Malibu*, 2016 WL 5746337, at *7 ("the United States has

not waived sovereign immunity in this case for a direct action by a provider" against a

FEHBA administrator).

### B.     FEHBA preempts Singleton's claims relating to SBP enrollees.

FEHBA contains the following express preemption provision, which gives

preemptive effect to the terms of the contract between OPM and BCBSA:

> The terms of any contract under this chapter which relate to the nature,
> provision, or extent of coverage or benefits (including payments with respect
> to benefits) shall supersede and preempt any State or local law, or any
> regulation issued thereunder, which relates to health insurance or plans.

5 U.S.C. § 8902(m)(1). The phrase "relate to" in FEHBA's preemption provision

"'express[es] a broad pre-emptive purpose'" and is "notably 'expansive [in] sweep.'" *Coventry Health Care of Mo., Inc. v. Nevils*, 581 U.S. 87, 96 (2017) (quoting *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 384 (1992)) (alterations added by *Nevils* Court).

Numerous courts have held that FEHBA's broad preemption provision applies when, as here, a medical provider sues a FEHBA administrator for allegedly failing to pay (or failing to fully pay) for services rendered to a FEHBA enrollee. *See, e.g., Health Care Serv. Corp. v. Methodist Hosps. of Dallas*, 814 F.3d 242, 253-55 (5th Cir. 2016); *Tantuwaya*, 169 F. Supp. 3d at 1067-70; *Inspire Malibu*, 2016 WL 5746337, at *8 n.2; *Zipperer v. Premera Blue Cross Blue Shield of Alaska*, No. 15-CV-00208, 2016 WL 4411490, at *4-6 (D. Alaska Aug. 16, 2016); *Lieberman v. Nat'l Postal Mail Handlers Union*, 819 F. Supp. 344, 349 (S.D.N.Y. 1993). Courts have also repeatedly held that state laws of general application "relate to"—and are thus preempted by—the subject listed in a preemption provision where the state law would operate on the listed subject in the particular case at issue. *See, e.g., Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 383, 386 (1992); *Gonzalez v. Blue Cross and Blue Shield Ass'n*, 62 F.4th 891, 904 (5th Cir. 2023).

Here, the preemptive SBP terms include:  (1) provisions regarding coverage through a provider network; (2) coverage provisions that served as Blue Cross NC's basis for denying or partially denying health benefit claims, including those stating that refractions are typically not covered (*see* Jiminian Decl. ¶ 11; 2024 Statement of Benefits at 53), that

14

limit benefits when the enrollee is 65 or older and not enrolled in Medicare Part B (*see* Jiminian Decl. ¶ 12; 2021 Statement of Benefits at 149), and that require the enrollee to pay a deductible before the SBP will pay benefits (*see* Jiminian Decl. ¶ 13; 2022 Statement of Benefits at 28); and (3) provisions setting forth the exclusive procedure for challenging a benefits denial. Thus, FEHBA preempts Singleton's claims relating to SBP enrollees.

## III. Most of Singleton's remaining state-law claims are untimely under the statute of limitations.

Most of Singleton's state-law claims (including some that must be dismissed for the reasons above) are untimely under the statute of limitations. The statute of limitations for Singleton's breach of contract claims are, at most, three years running from "the time of breach." *See Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 203 F. Supp. 3d 608, 614 (M.D.N.C. 2016) (citation omitted). That said, "parties may agree to a limitations period shorter than that provided by state law." *Badgett v. Fed. Express Corp.*, 378 F. Supp. 2d 613, 621 (M.D.N.C. 2005). Similarly, the statute of limitations for its UDTPA claims are four years running from the date of the violation. *See Faircloth v. Nat'l Home Loan Corp.*, 313 F. Supp. 2d 544, 553-54 (M.D.N.C. 2003). Courts dismiss claims "if all facts necessary to the statute of limitations defense clearly appear on the face of the complaint." *Topshelf Mgmt., Inc.*, 203 F. Supp. 3d at 614 (citation omitted and cleaned up). This is one of those cases.

Indeed, Singleton alleges that Blue Cross NC failed to adequately pay Plaintiff "on an estimated 2000 different dates" going back to early 2017. (Compl. ¶¶ 16, 18, 20.) Despite alleging that it "contacted" Blue Cross NC "[o]n many occasions from 2017 to the

15

present" to alert Blue Cross NC about these payment issues (Compl. ¶ 18), it did not initiate this action until December 19, 2024—almost eight years after the date of the initial alleged breach or unfair or deceptive practice. Yet the Provider Blue Book, which is incorporated into the Participation Agreement (*see* Ex. 1 § 2.3), provides only a two-year period of limitations absent limited (and inapplicable) exceptions.[4] Singleton is barred from pursuing any claims beyond that timeframe. *See Cansler v. Univ. Health Sys. of E. Carolina, Inc*., No. 4:22-CV-014-FL, 2023 WL 3147908, at *2 (E.D.N.C. Mar. 27, 2023) (dismissing breach of contract claim where, as here, plaintiff sat on its rights for over three years).

North Carolina federal courts routinely dismiss breach of contract and UDTPA claims where, as here, the complaint's allegations reveal that the claim is untimely. *See, e.g.*, *Cansler*, 2023 WL 3147908, at *2 (E.D.N.C. Mar. 27, 2023) (breach of contract claim); *Topshelf Mgmt.*, 203 F. Supp. 3d at 614-15 (same); *Faircloth*, 313 F. Supp. 2d at 554 (UDTPA claim). This Court should do likewise and dismiss all breach of contract claims that accrued before December 19, 2022 and claims concerning UDTPA violations that occurred before December 19, 2020.

## IV.     The breach of contract claims fail for lack of plausibility.

Further still, Singleton's breach of contract claims fail to plausibly state a cause of action under Rule 12(b)(6). To state a breach of contract claim, a plaintiff "must plausibly allege (1) the existence of a valid contract and (2) a breach of the terms of the contract."

---

[4] *See* The Blue Book Provider e-Manual at p. 238 § 9.24,
https://www.bluecrossnc.com/content/dam/bcbsnc/pdf/providers/forms-documents/blue-books/2023-commercial-blue-book.pdf.

*Waddell v. U.S. Bank Nat'l Assoc.*, 395 F. Supp. 3d 676, 685 (E.D.N.C. 2019). North Carolina federal courts routinely dismiss breach of contract claims that fail to plausibly satisfy these requirements. *See, e.g.*, *Kasparov v. Zacherl*, 729 F. Supp. 3d 524, 531-32 (E.D.N.C. 2024); *Doe v. Lenoir-Rhyne Univ.*, No. 5:18-CV-32-DSC, 2018 WL 4101520, at *3-4 (W.D.N.C. Aug. 28, 2018); *Colon v. Bimbo Foods Bakeries Distrib., Inc.*, No. 5:14-CV-361-D, 2014 WL 5509249, at *1 (E.D.N.C. Oct. 31, 2014). Because Singleton fails to plausibly allege a breach of contract, this Court should do likewise.

A breach of contract occurs "when there is 'non-performance, unless the person charged shows some valid reason which may excuse the non-performance.'" *Waddell*, 395 F. Supp. 3d at 685 (citation omitted). To be actionable, a breach must be "material." *Colon*, 2014 WL 5509249, at *1. A material breach "substantially defeats the purpose of the agreement or goes to the very heart of the agreement, or can be characterized as a substantial failure to perform." *Id.* (quoting *Long v. Long*, 588 S.E.2d 1, 4 (N.C. Ct. App. 2003)).

Here, Singleton's breach of contract claim is based solely upon conclusory and vague allegations that, beginning in early 2017, Blue Cross NC "underpaid Singleton for services Singleton provided to [Blue Cross NC] Members on an estimated 2000 different dates, in the principal amount of approximately $1,700,000." (Compl. ¶ 20; *see also id.* ¶ 16.) The Complaint—which fails to (a) identify any of the terms purportedly breached, (b) allege the dates on which such breaches occurred, or (c) specify how much money remains owed for each purported breach—is woefully deficient. *See, e.g.*, *Tasz, Inc. v.*

17

*Industrial Thermo Polymers, Ltd.*, 80 F. Supp. 3d 671, 682 (W.D.N.C. 2015) ("Bare statements that a party has breached 'agreements' … are proper for dismissal because they fail to put the opposing party on notice of the claims made against it and fail to provide the Court with any facts to support a plausible conclusion that the contract was breached.").

Nor can one plausibly draw an inference of a "material breach" since, rather than pursue a remedy for the breach, Singleton opted to continue providing services to Blue Cross NC members for almost eight years and signed a First Amendment to the Participation Agreement in 2024. (Compl. ¶¶ 9-10.) These allegations do not show any breach that "substantially defeat[] the purpose of the agreement" or constitute a "substantial failure to perform." *See Colon*, 2014 WL 5509249, at *1 (citation omitted).

Singleton's conclusory allegation that Blue Cross NC breached a contract on 2,000 unidentified dates is instead akin to a "formulaic recitation of" an element of its cause of action that "will not do." *Iqbal*, 556 U.S. at 678. Without basic factual details about which contractual provisions were purportedly breached or which claims are in dispute, Blue Cross NC lacks "fair notice" to form a proper response to Singleton's claims. *See Twombly*, 550 U.S. at 555. Without these basic factual allegations, the Court cannot discern whether Singleton's claim is "plausible." *See Guerrero v. Ollie's Bargain Outlet, Inc.*, 115 F.4th 349, 356 (4th Cir. 2024) (limiting the court's consideration in a Rule 12(b)(6) motion to "the four concerns of the complaint and the documents attached or incorporated thereto"). For these reasons, courts in this Circuit have dismissed breach of contract claims where, as here, a plaintiff vaguely alludes to "breaches" of contract but never identifies which alleged

breaches are at issue or when they occurred. *See, e.g.*, *Produce Source Partners, Inc. v. 7-Eleven, Inc.*, No. 3:24cv55, 2025 WL 594295, at \*9-10 (E.D. Va. Feb. 24, 2025) (dismissing claims for breaches of multiple contracts where the plaintiff "fail[ed] to append the [purported contracts] to its Amended Complaint or otherwise indicate the type, quantity, or price of the goods at issue"); *Integris Composites, Inc. v. Barrday Corp.*, No. 3:22-CV-347-RJC-DCK, 2023 WL 9103095, at \*5 (W.D.N.C. Dec. 5, 2023) (directing plaintiff to file a more definite statement where, among other things, the complaint did not identify "the nature and date of each breach alleged to have occurred"); *Walsh v. Bank of Am., NA*, No. 1:11-cv-1168 (AJT/JFA), 2012 WL 13020695, at \*2 (E.D. Va. Feb. 15, 2012) (dismissing breach of contract claim where plaintiff failed to allege "the dates on which the alleged [breach of contract] occurred"). This Court should do likewise and dismiss Singleton's breach of contract claim.

## V.    Singleton's UDTPA claims merely repackage its breach of contract claims and must be dismissed.

Finally, Singleton's UDTPA claims merely repackage its breach of contract claims and must be dismissed. To survive a Rule 12(b)(6) challenge aimed at an UDTPA claim, "a plaintiff must plausibly allege: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs." *Waterford I at Cary Park v. Nationwide Prop. & Cas. Ins. Co.*, 669 F. Supp. 3d 531, 535 (E.D.N.C. 2023). Singleton fails to plausibly allege these elements here.

Singleton initially alleges no unfair or deceptive act or practice. Practices are unfair if they are "immoral, unethical, oppressive, unscrupulous, or substantially injurious to

19

consumers," and they are deceptive if they have "the capacity or tendency to deceive." *BioSignia, Inc. v. Life Line Screening of Am., Ltd.*, No. 1:12CV1129, 2014 WL 2968139, at *5 (M.D.N.C. July 1, 2014) (quoting *Ace Chem. Corp. v. DSI Transp., Inc.*, 446 S.E.2d 100, 106 (N.C. Ct. App. 1994)). A "mere breach of contract"—even if intentional— "cannot sustain a UDTPA claim without a showing of 'substantial aggravating circumstances." *Stack v. Abbott Lab'ys, Inc.*, 979 F. Supp. 2d 658, 668 (M.D.N.C. 2013) (quoting *Griffith v. Glen Wood Co.*, 646 S.E.2d 550, 558 (N.C. Ct. App. 2007)). Such "substantial aggravating circumstances" generally include "forged documents, lies, and fraudulent inducements." *Intercollegiate Women's Lacrosse Coaches Assoc. v. Corrigan Sports Enterprises, Inc.*, 546 F. Supp. 3d 440, 456 (M.D.N.C. 2021) (citation omitted). "However, where the only acts alleged are themselves a breach of the contract between the parties, they will not support a UDTPA claim." *BioSignia*, 2014 WL 2968139, at *6.

Here, Singleton's UDTPA claim is based on nothing more than conclusory allegations about an alleged breach of contract. Singleton initially makes an abstract allegation that Blue Cross NC's "actions have been and remain immoral … by its continued payment to Singleton for services … *in amounts less than agreed to*." (Compl. ¶ 24(a) (emphasis added).) It then alleges that Blue Cross NC's "actions amount to an inequitable assertion of its power or position by … failing to pay Singleton … in accordance with the *agreed upon reimbursement schedule*." (*Id.* ¶ 24(b) (emphasis added).) Next, it alleges that Blue Cross NC's "actions in sending reimbursement to Singleton … in an amount *less than the rate agreed upon in the contract* … had the capacity and tendency to deceive

20

Singleton." (*Id.* ¶ 24(c) (emphasis added).) It finally alleges that Blue Cross NC's reimbursements "for less than the *contract amount* was unfair," which reimbursements purportedly occurred "even after Singleton requested [Blue Cross NC] to comply with the *contract terms*." (*Id.* ¶¶ 26-27 (emphasis added).)

As these allegations show, Singleton's UDTPA claim improperly attempts to "piggyback" off its breach of contract claim. *See BioSignia*, 2014 WL 2968139, at *6. But the allegations themselves reveal the contractual center of this dispute. *See Cross v. Formativ Health Mgmt., Inc.*, 439 F. Supp. 3d 616, 624 (E.D.N.C. 2020) ("Given the contractual center of this dispute, plaintiffs' UDTPA claims are out of place." (citation omitted)). Singleton otherwise fails to allege any aggravating circumstances, let alone any that are "substantial" like forged documents, lies, or fraudulent inducements. *See Corrigan Sports Enterprises, Inc.*, 546 F. Supp. 3d at 456; *see also Lambert v. First Horizon Bank*, No. 3:19-CV-581-RJC-DCK, 2021 WL 3260073, at *8 (W.D.N.C. June 29, 2021) ("[I]f Plaintiff alleges aggravating factors that 'are conclusory and fail to state sufficient factual content,' the Court should dismiss the UDTPA claim.").

Even so, Singleton fails to allege any "unfair" or "deceptive" act that would be actionable in this business context. *See Exclaim Mktg., LLC v. DirecTV, LLC*, 134 F. Supp. 3d 1011, 1020 (E.D.N.C. 2015) (noting that, because the UDTPA's purpose is to "benefit consumers," courts view "the rights of businesses to sue other businesses for violations of the UDTPA with a much more skeptical eye"), *aff'd*, 674 F. App'x 250 (4th Cir. 2016). Indeed, Singleton alleges that Blue Cross NC provided "bill reimbursement" documents

that alerted Singleton to the alleged underpayments. (*See* Compl. ¶ 25.) It cannot allege it was deceived because it admits that, after becoming aware of this information, it "contacted" Blue Cross NC "[o]n many occasions from 2017 to the present" requesting higher reimbursement. (*Id.* ¶ 18.) To the extent Singleton lacked awareness of the alleged underpayments, however, the Complaint reveals this was due to Singleton's own lack of due diligence: Singleton admits it could have known about Blue Cross NC's alleged unfair or deceptive acts if it had "examined each and every bill reimbursement." (*Id.* ¶ 25.) This case is simply no different than the countless others where courts have dismissed UDTPA claims where, as here, a plaintiff fails to allege substantial aggravating circumstances accompanying a purported breach of contract.[5]

Additionally, Plaintiff cannot satisfy the "in or affecting commerce" requirement. The UDTPA's definition of "commerce" excludes "professional services rendered by a member of a learned profession." N.C. Gen. Stat. § 75-1.1(b). This "learned profession" exemption applies if: (1) the person or entity performing the alleged act is a member of a "learned profession;" and (2) the conduct in question is the "rendering of professional services." *Cansler*, 2023 WL 3147908, at *4. Singleton, a healthcare provider that provides "professional services" (Compl. ¶ 8), easily satisfies the first requirement. *See Hamlet H.M.A., LLC v. Hernandez*, 821 S.E.2d 600, 606 (N.C. Ct. App. 2018) ("There is no dispute that doctors and hospitals are members of a learned profession."). This healthcare-related

---

[5] *See, e.g.*, *Waterford*, 669 F. Supp. 3d at 537; *Johnson v. Cricket Council USA, Inc.*, 658 F. Supp. 3d 276, 283-84 (E.D.N.C. 2023); *Hooker v. Citadel Salisbury LLC*, No. 1:21-cv-384, 2022 WL 1663421, at *7 (M.D.N.C. May 25, 2022).

payment dispute falls well within this broad learned profession exemption. *See, e.g., Allen v. Novant Health, Inc.*, No. 1:22-CV-697, 2023 WL 5486240, at *3 (M.D.N.C. Aug. 24, 2023) (holding that patients' UDTPA claims concerning a hospital's disclosure of medical information to Facebook fell under learned profession exemption); *Cansler*, 2023 WL 3147908, at *4 (dismissing UDTPA claim that concerned "a billing dispute arising from emergency care received from a hospital"); *Sykes v. Health Network Sols., Inc.*, 828 S.E.2d 467, 469 (N.C. 2019) (holding that plaintiff chiropractors' challenge to their exclusion from a network of providers covered by certain insurance payors was barred by the exemption). Singleton's claim is accordingly barred under the learned profession exemption.

## CONCLUSION

For the foregoing reasons, Blue Cross NC respectfully requests that the Court grant its Motion to Dismiss. Singleton's claims are preempted by federal law, barred by the federal government's sovereign immunity, largely barred by the applicable statutes of limitations, and fundamentally flawed in their pleading and substance. Thus, the Complaint should be dismissed in its entirety, with prejudice.

Respectfully submitted, this the 28th day of March, 2025.

/s/ *Chase H. Stevens*
Bradley A. Roehrenbeck (N.C. Bar # 34130)
Chase H. Stevens (N.C. Bar # 55099)
Kilpatrick Townsend & Stockton LLP
1001 West Fourth Street
Winston-Salem, NC 27101
Tel: (336) 607-7300
Fax: (336) 607-7500
broehrenbeck@ktslaw.com
chstevens@ktslaw.com

23

*Counsel for Defendant Blue Cross*
*and Blue Shield of North Carolina*

## CERTIFICATE OF WORD COUNT

The undersigned attorney hereby certifies that this Brief complies with LR 7.3(d)(1) of the Rules of Practice and Procedure of the United States District Court for the Middle District of North Carolina with respect to its length. This Brief was created using Microsoft Word. Based upon the word count of Microsoft Word, this Brief does not exceed 6,250 words exclusive of the caption, signature block, Certificate of Service and this Certification of Word Count.

Respectfully submitted, this the 28th day of March, 2025.

KILPATRICK TOWNSEND & STOCKTON LLP

By: /s/ *Chase H. Stevens*
Bradley A. Roehrenbeck (N.C. Bar # 34130)
Chase H. Stevens (N.C. Bar # 55099)
Kilpatrick Townsend & Stockton LLP
1001 West Fourth Street
Winston-Salem, NC 27101
Tel: (336) 607-7300
Fax: (336) 607-7500
broehrenbeck@ktslaw.com
chstevens@ktslaw.com

*Counsel for Defendant Blue Cross and Blue Shield of North Carolina*

## CERTIFICATE OF SERVICE

I hereby certify that on this date, I electronically filed the foregoing **DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS** and served the same upon counsel of record by e-mail and by depositing a copy thereof in the United States mail, postage prepaid and addressed as follows:

> Bruce W. Berger
> W. Stacy Miller, II
> Miller Law Group, PLLC
> 2424 Glenwood Avenue
> Raleigh, NC 27608
> Telephone: (919) 348-4361
> Facsimile: (919) 729-2953
> bruce@millerlawgroupnc.com
> stacy@millerlawgroupnc.com
>
> *Attorneys for Plaintiff*

This the 28th day of March, 2025.

> /s/ *Chase H. Stevens*
> Bradley A. Roehrenbeck (N.C. Bar # 34130)
> Chase H. Stevens (N.C. Bar # 55099)
> Kilpatrick Townsend & Stockton LLP
> 1001 West Fourth Street
> Winston-Salem, NC 27101
> Tel: (336) 607-7300
> Fax: (336) 607-7500
> broehrenbeck@ktslaw.com
> chstevens@ktslaw.com
>
> *Counsel for Defendant Blue Cross*
> *and Blue Shield of North Carolina*

26