IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

**SINGLETON VISION CENTER, P.A.**

               Plaintiff,

    v.                                             **Civil Action No. 1:25-CV-229**
                                                        Judge Bailey

**BLUE CROSS AND BLUE SHIELD OF
NORTH CAROLINA**,

               Defendant.

## ORDER REMANDING CASE

Pending before this Court is Defendant's Motion to Dismiss [Doc. 7], filed March 28, 2025. The Motion has been fully briefed and is ripe for decision. *See* [Docs. 18 & 21].

Singleton Vision Center, P.A. ("Singleton") is an ophthalmology practice serving Craven County, North Carolina, a medically underserved part of the state. Singleton entered into a Network Participation Agreement with Blue Cross and Blue Shield of North Carolina ("Blue Cross North Carolina") in February 2016; the agreement took effect June 1, 2016. Under the agreement, Singleton "agree[d] to render Medically Necessary Covered Services" to Blue Cross Members and "to accept as payment in full for Covered Services ... the lesser of [its] usual charge or the amount specified in the attached Reimbursement Exhibit(s)." [Doc. 8-1 at ¶¶ 2.1.1 & 4.1]. Among other prices, the Reimbursement Exhibit provided set rates for "Office-Based Surgical Suite" procedures. For Singleton, this item referred to cataract surgeries performed at the location listed in the Site of Service. Nowhere does the Agreement premise payment on the nature of the Member's Blue Cross

1

policy or suggest that payment would vary by more than the Member's deductible or co-payment requirements.

In 2017, Singleton noticed that payments from Blue Cross North Carolina for cataract surgeries did not match the terms of the Network Participation Agreement. Singleton made multiple attempts to address the issue with Blue Cross North Carolina, following the procedures outlined in the Network Participation Agreement. Despite these efforts, which spanned years, the underpayments continued, even after an adjustment to the reimbursement schedule that took effect on May 1, 2024.

Finally exhausted by the ongoing struggle to get paid, Singleton filed this lawsuit in Orange County Superior Court on December 19, 2024, asserting state-law claims for breach of contract and unfair and deceptive trade practices.

In response, Blue Cross North Carolina requested additional information from Singleton identifying the claims at issue. Singleton provided the requested information in late January 2025, in return for a commitment to confidentiality and the promise of reciprocal information sharing from Blue Cross North Carolina. The data Singleton shared with Blue Cross North Carolina clearly identified the claims at issue by date, encounter number, patient name and date of birth, and service. The spreadsheet also included information about payments sought, payments made, and amounts outstanding, accounting for patient co-payment and coinsurance obligations. The reciprocal information was not provided until Singleton repeated its request, after Blue Cross North Carolina had filed its Notice of Removal and Motion to Dismiss. The information provided included many claims other than those identified by Singleton as being at issue and did not include fields that would allow Singleton to correlate the information from Blue Cross North Carolina with

2

its own files or with the data in the spreadsheet Singleton provided to Blue Cross North Carolina.

Blue Cross North Carolina removed the case from Orange County Superior Court to the Middle District of North Carolina on March 21, 2025, and filed its Motion to Dismiss and supporting brief on March 28, 2025, moving for dismissal under Rule 12(b)(1) and 12(b)(6) and arguing that Singleton's claims were subject to ERISA preemption and sovereign immunity; that Singleton's claims were barred by the statute of limitations; and that Singleton's complaint failed to adequately plead breach of contract and unfair and deceptive trade practices. Singleton filed a Motion for Remand on April 21, 2025, arguing that the forum clause barred removal. [Doc. 14]. That Motion for Remand was denied by this Court on May 20, 2025. [Doc. 20].

The party seeking removal bears the burden of showing removal is proper. **Mulcahey v. Columbia Organic Chems. Co.**, 29 F.3d 148, 151 (4th Cir. 1994). When reviewing the grant of a motion to dismiss, we assume all facts in the complaint as true and resolve all doubts in favor of the non-moving party. **Edwards v. City of Goldsboro**, 178 F.3d 231, 243–44 (4th Cir. 1999).

"Under the removal statute, 'any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant' to federal court." **Aetna Health Inc. v. Davila**, 542 U.S. 200, 207 (2004) (quoting 28 U.S.C. § 1441(a) (2012)). District courts have original jurisdiction over claims "arising under the Constitution,

3

laws, or treaties of the United States." 28 U.S.C. § 1331. To determine whether a plaintiff's claims "arise under" the laws of the United States, courts typically use the "well-pleaded complaint rule," which focuses on the allegations of the complaint. *Aetna*, 542 U.S. at 207.

An exception to the well-pleaded complaint rule occurs when a federal statute completely preempts state law causes of action. *Id*. at 207–08. "[C]omplete preemption 'converts an ordinary state common law complaint into one stating a federal claim.'" *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 187 (4th Cir. 2002) (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). "[W]hen complete preemption exists, 'the plaintiff simply has brought a mislabeled federal claim, which may be asserted under some federal statute.'" *Sonoco* [*Prods. Co. v. Physicians Health Plan, Inc.*], 338 F.3d [366,] 371 [(4th Cir. 2003)] (quoting *King v. Marriott Int'l, Inc.*, 337 F.3d 421, 425 (4th Cir. 2003)). Defendants may remove preempted state law claims to federal court, regardless of the "label" that the plaintiff has used. See *id.*; *Griggs v. E.I. DuPont de Nemours & Co.*, 237 F.3d 371, 379 (4th Cir. 2001).

ERISA's broad civil enforcement provision, § 502(a), codified at 29 U.S.C. § 1132(a), has the potential to preempt state law causes of action. That provision allows a participant or beneficiary of an ERISA plan to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future

4

benefits under the terms of the plan[,] ... to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or ... to obtain ... equitable relief." *Id*. "This integrated enforcement mechanism ... is a distinctive feature of ERISA, and essential to accomplish Congress' purpose of creating a comprehensive statute for the regulation of employee benefit plans." *Aetna*, 542 U.S. at 208.

ERISA § 502(a) completely preempts a state law claim when the following three-prong test is met:

> (1) the plaintiff must have standing under § 502(a) to pursue its claim; (2) its claim must "fall[ ] within the scope of an ERISA provision that [it] can enforce via § 502(a)"; and (3) the claim must not be capable of resolution "without an interpretation of the contract governed by federal law," i.e., an ERISA-governed employee benefit plan.

*Sonoco*, 338 F.3d at 372 (alterations in original) (quoting *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1487 (7th Cir. 1996)).

*Prince v. Sears Holdings Corp.*, 848 F.3d 173, 176–77 (4th Cir. 2017).

In removing this case as a Federal question, the defendant represented, as it had to, that there was complete preemption.

5

> [T]he threshold requirement for complete preemption is that the plaintiff possess standing to assert its claim under § 502(a). *Butero [v. Royal Maccabees Life Ins. Co.]*, 174 F.3d [1207,] 1212 [(11th Cir. 1999)]; *Jass*, 88 F.3d [1482,] 1487 [(7th Cir. 1996)]. Section 502(a) specifies the types of claims that may properly be pursued under ERISA, as well as the parties entitled to assert those claims. More specifically, § 502(a)(3) is the part of § 502(a) that, according to PHP, applies to Sonoco's breach of contract claims. Importantly, the only parties entitled to pursue an ERISA claim under § 502(a)(3) are "participants," "beneficiaries," and "fiduciaries." *See* 29 U.S.C. § 1132(a)(3). And it is uncontroverted that [the plaintiff] is neither a participant nor a beneficiary under the Plan. Thus, [the plaintiff] has standing under § 502(a)(3) only if (1) it is a "fiduciary" under ERISA, and (2) it is asserting the breach of contract claims in its fiduciary capacity. *See Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir.1996) ("[A] fiduciary's standing is not for any and all purposes; rather a fiduciary has standing to bring actions related to the fiduciary responsibilities it possesses." (internal quotation marks omitted)).

*Sonoco Prods. Co.*, 338 F.3d at 372.

There is no indication that Singleton falls into any of these categories. In *Western Virginia Regional Emergency Physicians, LLC v. Anthem Health Plans of Virginia, Inc.*, the district court dealt with the same issue. 2024 WL 3497920 (E.D. Va. July 22,

6

2024) (Lauck, J.). In that case, groups of emergency room physicians sued Anthem with regard to the amount of money to be paid for their services. The Court noted that:

> [W]here a plaintiff explicitly pleads "direct claims and causes of action that are not predicated on an assignment of benefits from the patient, ... the mere existence of an assignment does not convert [plaintiffs'] state law claim ... into a derivative claim to recover benefits under the terms of an ERISA plan." *Emergency Care Servs. of Pa., P.C. v. UnitedHealth Grp.* (*"Emergency Care Servs."*), 515 F.Supp.3d 298, 310 (E.D. Pa. 2021) (quoting *N. Jersey Brain & Spine Ctr. v. United Healthcare Ins. Co.*, 2019 WL 6317390, at *5 (D.N.J. Nov. 25, 2019)) (quotation marks omitted); *see also Am. Funeral Fin., LLC v. UPS Supply Chain Sols., Inc.*, 2019 WL 3252402, at *4 (N.D. Ga. July 19, 2019) ("[T]he existence of the assignment is irrelevant to complete preemption if the provider asserts no claim under the assignment." (alterations and internal quotation marks omitted)); *Alta Los Angeles Hosps., Inc. v. Blue Cross of Cal.*, 2017 WL 3671156, at *3 (C.D. Cal. Aug. 24, 2017) ("[T]he mere fact that Plaintiff could have asserted a claim based on these assignments does not automatically mean that Plaintiff could not bring some other suit against Defendant based on some other legal obligation." (alterations and internal quotation marks omitted)); *Orthopaedic Care Specialists, P.L. v. Blue Cross & Blue Shield of Fla., Inc.*, 2013 WL 12095594, at *2 n.6 (S.D. Fla. Mar. 5, 2013) ("[T]he existence of the assignment is irrelevant to complete preemption if the provider asserts no

claim under the assignment."); ***Feldman's Med. Ctr. Pharmacy, Inc. v. CareFirst, Inc.***, 902 F.Supp.2d 771, 782 (D. Md. 2012) [(Quarles, Jr., J.)] (finding existence of assignments irrelevant to complete preemption if provider asserts no claim under the assignment); ***Lone Star OB/GYN Assocs. v. Aetna Health Inc.***, 579 F.3d 525, 529 n.3 (5th Cir. 2009) ("[W]here the basis of the suit is entirely independent of the ERISA plan, and thus of the plan member, an assignment of benefits from the patient cannot confer standing."); ***Children's Hosp. Corp. v. Kindercare Learning Ctrs., Inc.***, 360 F.Supp.2d 202, 207 (D. Mass. 2005) (remanding to state court because "the fact that [plaintiff] could have sued as an assignee is not the test for complete preemption" and "[a]s a master of its own complaint, [plaintiff] had the right to assert independent causes of action regardless of the assignment." (emphasis added)).

***W. Va. Reg'l Emergency Physicians, LLC***, 2024 WL 3497920, at *6.

In her opinion, Judge Lauck cited ***Emergency Care Services of Pennsylvania, P.C. v. UnitedHealth Group, Inc.***, 515 F.Supp.3d 298 (E.D. Pa. 2021), noting that:

> In ***Emergency Care Services***, in contrast, an Eastern District of Pennsylvania court granted remand to state court after finding that ERISA did not completely preempt the plaintiffs' state law claims where the plaintiffs could not have brought their claims directly under § 502(a) and plaintiffs lacked standing to assert their claims under ERISA. 515 F.Supp.3d at 309–10. The plaintiffs were professional emergency group practices that
8

staffed hospital emergency departments and treated emergency room patients at numerous Pennsylvania hospitals. *Id.* at 302. They sued in state court, alleging state law claims related to reimbursement rates paid by the defendant health insurance companies. *Id.* Although the plaintiffs had obtained assignment of benefits under the patients' insurance plans, the court correctly observed that "'the mere existence of an assignment does not convert [plaintiffs'] state law claim ... into a derivative claim to recover benefits under the terms of an ERISA plan.'" *Id.* at 310 (quoting *N. Jersey Brain & Spine Ctr.*, 2019 WL 6317390, at *5). Section 502(a) permits recovery of benefits "due to [a participant or beneficiary] under the terms of his [or her] plan, to enforce his [or her] rights under the terms of the plan, or to clarify his [or her] rights to future benefits under the terms of the plan." 29 U.S.C. 1132(a)(1). The *Emergency Care Services* court found that, because the plaintiffs' state law breach of contract claims were "not predicated on an assignment of benefits from the patient," the plaintiffs did not have standing to assert their claims under § 502(a). *Emergency Care Servs.*, 515 F.Supp.3d at 310.

*W. Va. Reg'l Emergency Physicians, LLC*, 2024 WL 3497920, at *7.

Judge Lauck found that the lack of standing alone mandated remand.

It is important to note that in this case, Singleton is suing Blue Cross North Carolina on the basis that Blue Cross North Carolina has not paid Singleton the appropriate amount required by the Network Participation Agreement.

9

In ***Lone Star OB/GYN Assoc. v. Aetna Health Inc.***, 579 F.3d 525, 530–31 (5th Cir. 2009), the Fifth Circuit held that:

> A claim that implicates the *rate* of payment as set out in the Provider Agreement, rather than the *right* to payment under the terms of the benefit plan, does not run afoul of [***Aetna Health, Inc. v.*** ***Davila***, [542 U.S. 200 (2004)], and is not preempted by ERISA. See ***Blue Cross v. Anesthesia Care Assocs. Med. Group, Inc.***, 187 F.3d 1045, 1051 (9th Cir. 1999). Though the plan and the Provider Agreement cross-reference each other, the terms of the plan—in particular, those related to coverage—are not at issue in a dispute over whether Aetna paid the correct rate for covered services as set out in the Provider Agreement. While Aetna is correct that any determination of benefits under the terms of a plan—i.e., what is "medically necessary" or a "Covered Service"—does fall within ERISA, Lone Star's claims are entirely separate from coverage and arise out of the independent legal duty contained in the contract and the TPPA.
>
> In so holding, we adopt the reasoning of the Third and Ninth Circuits, and that of a majority of district courts in this Circuit which have relied on this distinction between "rate of payment" and "right of payment." See ***Anesthesia Care***, 187 F.3d at 1051; ***Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan***, 388 F.3d 393, 403–04 (3d Cir. 2004). ***Anesthesia Care*** dealt with essentially identical facts to this case: a group of medical providers participating in an ERISA-regulated medical

10

care plan offered by Blue Cross sued Blue Cross over changes to fee schedules that were specified in an agreement between Blue Cross and the providers. See **Anesthesia Care**, 187 F.3d at 1048. The Ninth Circuit found that the cause of action arose out of the provider agreement and thus did not fall under ERISA § 502(a), rejecting Blue Cross's argument that a reference in the provider agreements to "Physician's covered billed charges" depended on interpretation of the terms of the plan. See **id.** at 1051–52.

579 F.3d at 530–31 (emphasis in original). See also **Conn. State Dental Assoc. v. Anthem Health Plans, Inc.**, 591 F.3d 1337 (11th Cir. 2009).

This Court finds that the present case falls clearly within the rate of payment/right to payment dichotomy as a rate of payment case, providing another reason why the claims in the Complaint are not completely preempted. Inasmuch as the claims are not subject to complete preemption, this Court lacks subject matter jurisdiction over the case. Accordingly, pursuant to 28 U.S.C. § 1447(c) , this case is **REMANDED** to the General Court of Justice, Superior Court Division, of Orange County, North Carolina. Defendant's Motion to Dismiss [**Doc. 7**] is **DENIED**.

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED**: June 2, 2025.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

11